# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BERNARD L. WESTBROOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:12CV540 |
| ) | |
| NORTH CAROLINA A&T STATE ) | |
| UNIVERSITY, LINDA McABEE, and ) | |
| CINDY POOLE, ) | |
| ) | |
| Defendants. ) | |

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION

This matter is currently before the Court on Plaintiff Bernard Westbrook's ("Plaintiff") motion to appoint counsel (Docket Entry 7.) Also before the court is a motion filed by Defendants North Carolina State A&T University, Linda McAbee, and Cindy Poole to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket Entry 10.) For the following reasons, the Court will deny Plaintiff's motion to appoint counsel.[1] Further, the court will recommend that Defendant's motion to dismiss for lack of subject matter jurisdiction and failure to submit a claim be denied.

---

[1] Pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A), a United States Magistrate Judge may hear and determine any pretrial matter not considered to be dispositive. A motion for appointment of counsel is clearly non-dispositive. *See* 28 U.S.C. § 636 (b)(1)(A); *McNary v. Norman*, No. 96-3421, 134 F.3d 374 (table), 1998 WL 4738, at *3 (7th Cir. Jan. 6, 1998) (unpublished); *In re Lane*, 801 F.2d 1040, 1042 (8th Cir. 1986); *Siers v. Morrash*, 700 F.2d 113, 115 (3d Cir. 1983); *Williams v. Canady*, No. 5:10CV558FL, 2011 WL 1897440, at *1-2 (E.D.N.C. May 18, 2011) (unpublished); *Abu-Shabazz v. Sondervan*, No. AW-03-1012, 2004 WL 1391408, at *2 (D. Md. Feb. 17, 2004) (unpublished), *aff'd* 96 F. App'x 920 (4th Cir. 2004); *Kampfer on behalf of Kampfer v. Gokey*, 159 F.R.D. 370, 372 (N.D.N.Y. 1995).

## I. PROCEDURAL HISTORY

Plaintiff, proceeding *pro se*, filed this action using a form complaint on May 30, 2012, alleging religious discrimination in the workplace under Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e *et. seq.* Plaintiff filed this action after receiving a Right-to-Sue letter from the United States Department of Justice on March 3, 2012. Subsequently, Plaintiff filed his motion to appoint counsel on June 14, 2012.

## II. FACTUAL BACKGROUND

Plaintiff filed this complaint after his employer, North Carolina A&T State University ("University"), terminated him on October 6, 2008. (Docket Entry 2.) The complaint alleges that the University dismissed Plaintiff as a Parking Attendant because he refused to carry a weapon. (Compl. at 2, Docket Entry 2.) According to Plaintiff, to carry a weapon conflicts with his belief as a Jehovah's Witness that believers must promote peace among neighbors. (Pl.'s Resp. in Opp'n to Mot. to Dismiss ("Pl's. Resp.") at 11, Docket Entry 13.)

The University employed Plaintiff without conflict for twelve years, despite Plaintiff's openness about his religion. In 1994, the University hired Plaintiff as an Assistant Vehicle Coordinator/Driver-Courier for the Chancellor. (Def.'s Mem. Supp. Mot. to Dismiss, ("Def.'s Mem.) Ex. 2 at 1, Docket Entry 11.) In December of 2006, the University reassigned Plaintiff as a Property Security Officer/Parking Control Officer under the Police and Public Safety department. (*Id.*) According to Plaintiff, he agreed to the arrangement because the University faced staffing issues. (*Id.*) Plaintiff, however, communicated to University's management that his religion would prevent him from carrying a weapon. (Pl.'s Resp. at 1-2, Docket Entry 13.) According to Plaintiff, the University consented to this

arrangement. Plaintiff worked under Police Chief Curtis Bigelow without incident until a change in authority in 2008. (Compl. at 1, Docket Entry 2.)

In 2008, Cindy Poole became the Interim Police Chief. (*Id.*) Soon after Chief Poole took over the department, conflicts arose over Plaintiff's religious beliefs and job duties. According to Plaintiff, these interpersonal conflicts began after Plaintiff declined to attend a previous Christmas party because of his religious beliefs. (Pl.'s Resp. at 2, Docket Entry 13.) Later in the year, after Plaintiff requested time off to attend a vacation bible school, coworkers reportedly told him that Chief Poole was delaying the approval for his time off because she "did not like his religion." (*Id.* at 3.) The clashes peaked when Chief Poole announced that the department would have in-service weapons training. (*Id.*) The University informed security and Parking Service Officers that all department employees had to have "duty arms" as part of the work uniform. (Pl.'s Resp. at 9, Docket Entry 13.) Because of his religious views, however, Plaintiff refused to accept or use the weapons. (*Id.*) He immediately asked his supervisor to transfer him to a different department or exempt him from carrying the weapon. (*Id.*) Plaintiff's requests were denied. (*Id.*)

On August 1, 2008, Plaintiff verified with the training coordinator, Captain Pam Feaster, the religious reasons that prevented his participation in the training. (Pl.'s Resp. at 9, Docket Entry 13.) Captain Feaster told Plaintiff to attend the training session and that "no exceptions, short of death" would excuse him from being written up or terminated if he did not attend. (*Id.*) On August 6, 2008, Plaintiff observed the activities of the training session at the suggestion of his supervisor. (*Id.* ¶ 2.) Nonetheless, when Plaintiff refused to sign for a weapon, another supervisor, Captain Berry Black, called him out of the training

3

and berated him. (*Id.* ¶ 3.) Captain Pam Feaster then arrived at the session and told Plaintiff that he needed to go home until the University called him back to work. (*Id.* ¶ 4.) Plaintiff left the training session but remained on the campus to look for the new Police Chief, Glenn Newell. (*Id.*) When he could not find Chief Newell, Plaintiff spoke to Cindy Poole, who had resumed her duties as Deputy Chief. (*Id.* ¶ 6.) Deputy Chief Poole sent Plaintiff back to the training session with instructions to observe but not participate. (*Id.*) Later, Chief Newell allegedly told Plaintiff that he needed to sign up for the next weapons training or he would be out of a job. (*Id.* ¶ 7.)

Plaintiff alleges that he met with Vice Chancellor of the Department of Human Resources, Ms. Linda McAbee, and asked her to either exempt him from the requirement or reassign him altogether. (Pl.'s Resp. at 3, Docket Entry 13.) McAbee's first response to Plaintiff was that he should just do the weapon training when the department scheduled another training session, and that there "could be no harm in that." (Pl.'s Resp. at 8 ¶ 8, Docket Entry 13.) Plaintiff met with McAbee again after Plaintiff refused to attend the next training session. In a meeting on September 5, 2008, McAbee told Plaintiff that she would reasonably accommodate Plaintiff by reclassifying his position with the Office of State Personnel. (*Id.* ¶ 10; *see also* Pl.'s Resp. at 11, Docket Entry 13.) When McAbee took no further action, Plaintiff filed a petition with the Office of Administrative Hearings ("OAH"). (Def.'s Mem., Ex. 2 at 2, EEOC Charge, Docket Entry 11.) OAH scheduled a hearing for June 2009. (*Id.*) The University, however, terminated Plaintiff before the OAH could conduct a hearing. The University confirms his termination date as October 6, 2008. (Def.'s Mem, Ex. 1, Decl. of Sylvia Clark Anderson at 2, Docket Entry 11-1.)

4

Plaintiff timely filed his religious discrimination claim with the EEOC on March 19, 2009. (Def.'s Mem. Ex. 2 at 2, Docket Entry 11-2.) On March 2, 2012, nearly three years later, the Civil Rights division of the United States Department of Justice issued Plaintiff a Right-to-Sue letter. (Pl.'s Resp. at 7, Docket Entry 13.) The Right-to-Sue letter provided in relevant part:

> It has been determined that the Department of Justice will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC). This *should not be taken to mean* that the Department of Justice has made a judgment as to whether or not your charge is meritorious."

(*Id.*) (emphasis added). Plaintiff then timely filed this action against the University, Cindy Poole, and Vice Chancellor of the Department of Human Resources, Linda McAbee in this district on May 30, 2012.[2] (Compl. at 1, Docket Entry 2.)

## III. DISCUSSION

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice . . . to discharge any individual, or otherwise to discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1); *see also Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006) (observing that discrimination as to "terms, conditions, or privileges of employment, because of [an] individual's race[, color, religion, sex, or national origin] . . . includes maintaining a racially[, color-based, religiously, sexually, or national origin-based] hostile work environment." (internal quotation marks omitted)). In addition, Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his

---

[2] Title VII allows an aggrieved party 90 days after receipt of a "right to sue" letter from the OC to file a civil action. *See* 42 U.S.C. § 2000e-5(f)(1).

5

employees . . . because [the employee] has made a charge . . . under [Title VII]." 42 U.S.C. § 2000e–3(a).

## A. Appointment of Counsel

Plaintiff filed his motion for appointment of counsel on June 14, 2012. Civil litigants do not have an absolute constitutional right to appointed counsel. *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Under Title VII, however, courts have discretion to appoint counsel, "in such circumstances as the court may deem just." 42 U.S.C. § 2000e-5(f)(1); *see also Anderson v. Potter*, 149 F. App'x 175, 175 (4th Cir. 2005) (citing *Jenkins v. Chemical Bank*, 721 F.2d 876, 879 (2d Cir. 1983) and *Young v. K-Mart Corp.*, 911 F. Supp. 210, 211 (E.D. Va. 1996)); accord *Castner v. Colorado Springs Cablevision*, 979 F. 2d 1417, 1420 (10th Cir. 1992) (citing *Poindexter v. Federal Bureau of Investigation*, 737 F.2d 1173, 1183 (D.C. Cir. 1984)). To date, the Supreme Court has not developed a standard for appointing counsel under Title VII's statutory framework. *Tyson v. Pitt Cnty Gov't*, 919 F. Supp. 205, 207 (E.D.N.C. 1996). The Fourth Circuit, however, along with many other circuits, has adopted three factors to determine whether appointment of counsel would be proper:

      (1) the plaintiff's financial ability to retain an attorney;
      (2) the efforts of the plaintiff to retain counsel;
      (3) the merits of the case;

*Scott v. Health Net Fed. Servs., LLC*, 463 F. App'x 206, 209 (4th Cir. 2012). Courts also consider a plaintiff's ability to represent him or herself as a fourth prong in the analysis. *Valentine v. Potter*, No. 1:09CV880, 2013 WL 1320474, at *5 (M.D.N.C. Mar. 29, 2013); *Hunter v. Dep't of Air Force Agency*, 881 F.2d 1314, 1317 (11th Cir. 1998); *Poindexter*, 737 F.2d at 1185; *Young v. K-Mart Corp.*, 911 F. Supp. 210, 211 (E.D. Va. 1996); *Tyson*, 919 F. Supp. at 207. The discussion which follows will address each of these factors.

6

### 1. Financial Ability

Under this test, the court first considers the plaintiff's ability to pay for a lawyer. "A litigant need not be destitute to qualify for appointed counsel under [Title VII]. Rather, the court should examine the plaintiff's ability to hire counsel and still meet his or her daily expenses." *Castner*, 979 F.2d at 1421-22 (internal citations omitted). The appointment provision aims to protect indigent litigants with viable Title VII claims. *Poindexter*, 737 F.2d at 1186. Thus, "[i]f a court finds that a plaintiff *can* afford to hire counsel, this ordinarily will be a dispositive ground for denying the request for appointment." *Id.* In this case, Plaintiff's motion to proceed *in forma pauperis* was granted. (Docket Entry 4.) Thus, this factor weighs in Plaintiff's favor because Plaintiff has demonstrated that he is unable to pay for representation. *See Valentine*, at * 5 ("The [district court] granted Plaintiff's application to proceed *in forma pauperis*. Under these circumstances, this factor weighs in favor of appointment of counsel."); *Tyson*, 919 F. Supp. at 207 ("In this case, the plaintiff has already been granted permission to proceed *in forma pauperis*. Accordingly, the court follows the earlier ruling and finds that the plaintiff lacks the financial ability to retain private counsel.")

### 2. Diligence of Effort

The second factor requires the court to consider whether a plaintiff tried to obtain a lawyer. The court, in fact, expects plaintiffs to attempt to secure counsel, even if the only possibility of payment is through a contingency fee. *See Tyson*, 919 F. Supp. at 207; *see also Bradshaw v. Zoological Soc. of San Diego*, 662 F.2d 1301, 1319 (9th Cir. 1981) ("All that can be required of plaintiffs under this aspect of the test is that they make what can be considered a reasonably diligent effort under the circumstances to obtain counsel."). Here, the record

7

does not reflect that Plaintiff attempted to secure counsel. In his motion to appoint counsel, in fact, Plaintiff only asserts "financial difficulties" and "financial hardship" as the basis for his motion, and provides no explanation of attempts he made (if any) to obtain counsel. (Pl.'s Mot. for App't of Counsel, Docket Entry 7.) Thus, the court cannot conclude that Plaintiff exhausted all possible avenues to secure counsel. The court will weigh this factor against the Plaintiff. *See Tyson*, 919 F. Supp. at 207.

### 3. Merits of Claim

The court next must decide whether the plaintiff has a meritorious claim. The EEOC's determination as to the merit of a plaintiff's claim may be probative, but is not preclusive to appointing counsel under Title VII. *Castner*, 979 F.2d at 1422 ("Although we recognize the EEOC's expertise in making these assessments, we agree with the majority of courts that the district court must make an independent determination of whether a discrimination claim has merit.") The Eighth Circuit Court of Appeals in analyzing a plaintiff's claim for frivolity, *i.e.*, to determine if the plaintiff had stated a *prima facie* case of discrimination, stated:

> We do agree that a plaintiff must establish a prima facie claim in the pleadings, which, if proven, would result in some form of relief for the plaintiff. However, this statement is really no more than an acknowledgment that the appointment of counsel should be given serious consideration by the district court if the plaintiff has not alleged a frivolous or malicious claim. If a frivolous claim has been alleged, the district court may dismiss the claim.

*Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1005 (8th Cir. 1984); *see also Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992), *cert. denied*, 506 U.S. 1021 (1992); *Scott v. Tyson Foods, Inc.*, 943 F.2d 17, 19 (8th Cir. 1991) (noting that once the factors set out in *Nelson* have

8

Case 1:12-cv-00540-JAB-JLW   Document 14   Filed 04/17/13   Page 8 of 15

been considered and satisfied, a court has the discretion to appoint counsel); *Crawford-Graham v. Shinseki*, 2013 U.S. Dist. LEXIS 25134, at *13 (E.D. Mo. Feb. 25, 2013) ("In determining whether to appoint counsel, the Court considers several factors, including (1) whether the plaintiff has presented non-frivolous allegations supporting his or her prayer for relief. . . .").

In this case, Plaintiff alleges that Defendants discriminated against him because of his religion. (Compl. at 1, Docket Entry 2; *see also* Pl.'s Resp. at 1-4, Docket Entry 13.) If proved, Plaintiff would be able to obtain relief under Title VII. A plaintiff may establish a *prima facie* claim of religious discrimination under Title VII by showing:

> (1) he has a bona fide religious belief that conflicts with an employment requirement;
> (2) he informed the employer of this belief; and
> (3) he was disciplined for failure to comply with the conflicting employment requirement.

*E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (citing *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996)).

To establish the first prong of the *prima facie* case of religious discrimination, Plaintiff must show that he held a bona fide religious belief that conflicted with an employment requirement. *Id.* According to EEOC statutory language, "religious practices" include "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1. In this case, Plaintiff identifies himself as a Jehovah's Witness. (Compl. at 1, Docket Entry 2; *see also* Pl.'s Resp. at 1-4, Docket Entry 13.) Plaintiff alleges that as part of his religious views, he believes that possessing weapons is directly contrary to his belief to love his neighbors and therefore he

9

refuses to carry a weapon. (Pl.'s Resp. at 11, Docket Entry 13.) Plaintiff worked at the University for twelve years without carrying a weapon, even while at the Police and Public Safety department. (Def.'s Mem., Ex. 2 at 2, Docket Entry 11.) Eventually conflict arose with Plaintiff's job duties in 2008 when the University made weapons training a requirement for department personnel. (*Id.*) Moreover, defendants do not contest the sincerity of Plaintiff's beliefs. Therefore, Plaintiff has satisfied the first prong of a *prima facie* case of religious discrimination because he holds a genuine belief against carrying weapons. *See Firestone*, 515 F.3d at 312.

Secondly, Plaintiff must prove that he notified his supervisors about his religious beliefs. Plaintiff insists that his religious convictions were no secret at the University. Plaintiff does clearly allege that he openly communicated to his superiors that he was a Jehovah's Witness. (Compl. at 1, Docket Entry 2; *see also* Pl.'s Resp. at 1-2, 9, Docket Entry 13.) He also communicated the limitations he faced in the workplace because of his beliefs. (*Id.*) Additionally, Plaintiff notified high-level administrators about his religious views both verbally and by submission of multiple memos. (*See, e.g.*, Pl.'s Resp. at 11, Docket Entry 13.) Defendants do not contest that Plaintiff notified the University of his religious beliefs. It follows, therefore, that Plaintiff has met the second prong of his *prima facie* case of religious discrimination by alleging that he notified his employer of his religious beliefs. *See Firestone*, 515 F.3d at 312.

Third, Plaintiff alleges that Defendants terminated Plaintiff because of his refusal to carry a weapon, and thus Plaintiff was disciplined for failing to comply with the work requirement. In the affidavit signed by Linda McAbee, the University confirms Plaintiff's

10

Case 1:12-cv-00540-JAB-JLW   Document 14   Filed 04/17/13   Page 10 of 15

termination date of October 6, 2008. (Decl. of Sylvia Clark Anderson Ex. 1 at 2, Docket Entry 11.) The reason for Plaintiff's termination, however, is not included in the affidavit. (*Id.*) Defendant's counsel mentions that the termination is a public record, but counsel never cites a specific reason for Plaintiff's termination. (Pl.'s Resp. at 9, Docket Entry 13.) Plaintiff also alleges that Chief Newell and Captain Pam Feaster threatened to terminate him for noncompliance. (*Id.*) When the court considers the alleged threats from Plaintiff's supervisors along with the termination shortly after the conflict over the weapon requirement, it appears that the Plaintiff alleges that Defendants terminated Plaintiff because he refused to carry a weapon for religious reasons. In sum, Plaintiff has established a *prima facie* claim for religious discrimination in his pleadings. The court weighs this factor in Plaintiff's favor in determining whether to appoint counsel to the *pro se* plaintiff. *See Nelson*, 728 F.2d at 1005.

### 4. Capacity for Self-Representation

The last factor for a court to consider on a motion to appoint counsel to a *pro se* litigant is whether he or she is capable of representing himself in the litigation. *Poindexter*, 737 F.2d at 1188. In making this determination, the Court "look[s] to the complexity of the legal issues and [P]laintiff's ability to gather and present crucial facts." *Castner*, 979 F.2d at 1422. Although Plaintiff's original complaint was not as detailed as it could have been, Plaintiff has demonstrated awareness of proper filing deadlines and procedures and the ability to articulate recognizable claims for employment discrimination and retaliation. (Pl.'s Mem., Ex. 2 at 2, Docket Entry 11; Compl. at 1, Docket Entry 2; Pl.'s Resp. at 1-4, Docket Entry 13.) Additionally, Plaintiff's *pro se* Response in Opposition to Defendants' Motion to

dismiss is comprehensive and provides more detail than his original complaint. (*See* Pl.'s Resp., Docket Entry 13.) Moreover, such claims generally proceed under well-established legal frameworks. *See, e.g., Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331-38 (4th Cir. 2005). Plaintiff has demonstrated himself to be competent enough to maintain his case. Even if Plaintiff cannot secure an attorney on a contingency basis for his discrimination claim, Plaintiff has demonstrated that he has the ability to comply with the requirements for moving his civil case forward. *See Williams v. Court Servs & Offender Supervision Agency for D.C.*, 878 F. Supp. 2d 263, 267 (D.D.C. 2012) ("[T]here is no indication that [this] case is more complex than many of the straightforward actions filed in this court under Title VII, an area where the law is fairly settled. Moreover, [the plaintiff] has represented himself fairly ably in proceedings to date. Although the plaintiff's pleadings are not always perfectly clear, he has demonstrated an ability to communicate with the court and to file appropriate motions. . . . [The plaintiff] appears prepared to be an effective advocate on his own behalf, and [thus] appointment of counsel . . . is not necessary . . . .").

In sum, the record indicates that although Plaintiff lacks the financial ability to hire counsel and arguably has a meritorious claim, he has not exercised diligence in attempting to obtain counsel. Additionally, he has demonstrated the ability to represent himself. As a result, the other relevant factors weigh against appointment of counsel. The Court will therefore deny his instant motion for appointment of counsel.

### B. Motion to Dismiss

Defendants have moved to dismiss the Complaint in this action pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants assert that this court lacks jurisdiction because

12

Plaintiff did not allege in his Complaint that he had received a right to sue letter from the EEOC. Defendants, relying on *Davis v. North Carolina Dep't of Corrections*, 48 F.3d 134, 149 (4th Cir. 1995), contend that "receipt of, or at least entitlement to a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint." (Def.'s Mem. at 3-4.) However, as noted by a district court in Maryland, the language quoted from *Davis* "unfortunately perpetuates an error in dictum from a prior case." *Barkhorn v. Ports America Chesapeake, LLC*, Civil No. JKB-10-750, 2011 WL 4479694, at *2 (D.Md. Sept. 26, 2011). As noted by the *Barkhorn* court, section 2000e-5(f)(1) does not contain a pleading requirement. *Id.* In fact, the statute provides, in part:

> If a charge filed with the Commission pursuant to subsection (b) of this section, is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivisions, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

42 U.S.C. § 2000e-5(f)(1). There is no explicit pleading requirement included in the statute.

The *Barkhorn* court further noted that "none of the other cases cited [in] *Davis* made any mention of a pleading requirement." *Barkhorn*, 2011 WL 4479694, at *2. The *Barkhorn* court went on to state: "It seems clear, then, that neither *Davis* nor [the case cited in *Davis*] 'held' that a plaintiff must allege the receipt or entitlement to

13

receipt of a right to sue letter in order for a federal district court to have jurisdiction." After reading *Davis* and the cases cited therein, this court is in agreement with the reasoning of the court in *Barkhorn*.

To be sure, the court cannot ignore the jurisdictional prerequisites of section 2000e-5. However, Plaintiff's *pro se* pleadings must be held to a less stringent standard than the one applied to attorney-drafted pleadings. Defendants are correct that Plaintiff did not plead receipt of a right-to-sue letter in his complaint; however, it is equally clear that Plaintiff did receive a right-to-sue letter from the EEOC, before he even filed this action. Plaintiff attached this document to his response to the motion to dismiss. (Docket Entry 13.) The document indicates that a copy of it was sent by the EEOC to the University attorney. For the Defendant to argue that this court lacks jurisdiction based on a pleading technicality, in a matter where the plaintiff is proceeding *pro se*, is "at least somewhat disingenuous." *Barkhorn*, 2011 WL 4479694, at *3. This formalistic argument by Defendant is ultimately unpersuasive. The motion to dismiss for lack of subject matter jurisdiction should be denied.

Defendant has also moved to dismiss this action, to the extent that it alleges a claim under 42 U.S.C. § 1983, for failure to state a claim. Defendant asserts that the statute of limitations has run on any section 1983 claim asserted by Plaintiff. However, a review of the complaint shows that Plaintiff has alleged a claim under Title VII, not section 1983. Therefore, Defendant's motion is without merit.

14

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's motion to appoint counsel (Docket Entry 7) is hereby **DENIED**. Additionally, it is **RECOMMENDED** that Defendant's Motion to Dismiss (Docket Entry 10) pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted be **DENIED.**

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
April 17th, 2013