IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BERNARD L. WESTBROOK,                )
                                     )
                Plaintiff,           )
                                     )
        v.                           )        1:12CV540
                                     )
NORTH CAROLINA A&T STATE             )
UNIVERSITY, LINDA MCABEE,            )
and CINDY POOLE,                     )
                                     )
                Defendants.          )

<u>MEMORANDUM OPINION AND ORDER</u>

BEATY, District Judge.

This matter is currently before the Court on Defendant's Motion for Summary Judgment [Doc. #30] filed by Defendant North Carolina A&T State University[1] ("Defendant"). In his complaint, Bernard L. Westbrook ("Plaintiff") asserts claims of religious discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* Defendant's Motion for Summary Judgment seeks summary judgment on the entirety of Plaintiff's claims and is fully briefed and is now before the Court for review. Based on the discussion below, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment.

II.     FACTUAL AND PROCEDURAL BACKGROUND

Defendant hired Plaintiff in May 1994 as a temporary employee and such employment became permanent in 1996. Plaintiff worked for the Defendant as a Vehicle Operator until 1999

---

[1]Defendants Linda McAbee and Cindy Poole were dismissed from this action pursuant to this Court's Memorandum Opinion and Order [Doc. # 18] granting in part and denying in part Defendants' Motion to Dismiss [Doc. # 10].

when Defendant reclassified his position as a Program Assistant IV and relocated his duties to Human Resources.  In 2006, Defendant reassigned Plaintiff to the Department of Police and Public Safety ("Police Department), where he was assigned to work as a parking services officer.

Plaintiff is a Jehovah's Witness and due to his religious beliefs he does not celebrate Christmas, birthdays, and does not carry weapons.  At the time of his reassignment to the Police Department, Plaintiff told the Director of Human Resources that his religion would prevent him from carrying a weapon.  While the Police Department's General Orders contained an order that required parking service officers to be trained in and carry defensive weapons, this order was not initially enforced at the time Defendant reassigned Plaintiff to the department.

In April 2008, Cindy Poole ("Ms. Poole") became the Interim Police Chief of the Police Department and she thereafter, made the decision to enforce the general order requiring weapons training and the carrying of weapons.  Plaintiff asserts that such decision was motivated by Ms. Poole's hostility towards his religion.  This hostility allegedly began when Plaintiff, due to his religious beliefs, declined Ms. Poole's request that Plaintiff oversee a Christmas party due to Plaintiff's religious beliefs.   After Plaintiff declined the request to oversee the Christmas party, the Plaintiff requested vacation leave to attend a Bible conference.  Plaintiff alleged that Ms. Poole required Plaintiff to advise his co-workers of the reason for his requested vacation leave and to obtain their written consent for him to take his vacation prior to granting him the leave, which was later granted.

In August 2008, Glen Newell ("Chief Newell") took over the Police Chief position for the department.  Chief Newell retained Ms. Poole's decision to implement the general order

requiring weapons training and the carrying of weapons. Accordingly, Plaintiff was notified that he was to attend weapon training. Plaintiff notified his superiors of his objection to attending and participating in the training. Eventually, Chief Newell informed Plaintiff that if he failed to attend and complete training it would lead to disciplinary action, including termination. Plaintiff met with Vice Chancellor of Human Resources Linda McAbee ("Ms. McAbee") regarding the situation on at least two different occasions. Plaintiff alleges that initially, Ms. McAbee dismissed his religious beliefs and informed Plaintiff that she could not help him locate a different position. During the second meeting with Ms. McAbee, Plaintiff asserts that she did agree to help him locate a different position, but thereafter she did not follow through with her promise. Plaintiff's situation, was ultimately not resolved, and as a result of his refusal to attend the weapons training, Defendant terminated Plaintiff's employment on October 6, 2008.

On March 19, 2009, Plaintiff filed his religious discrimination claim with the Equal Employment Opportunity Commission ("EEOC"). Three years later, on March 2, 2012, the EEOC issued a Right-to-Sue Letter, and on May 30, 2012, Plaintiff filed his complaint in this action.[2] Defendants then filed a Motion to Dismiss [Doc. # 10]. The Court granted the Motion to Dismiss as to Defendants Linda McAbee and Cindy Poole, but denied the motion as to Defendant North Carolina A&T State University.

Defendant now brings a Motion for Summary Judgment [Doc. # 30] requesting that this Court enter summary judgment in its favor as to Plaintiff's religious discrimination claims. Specifically, Defendant argues that it is entitled to summary judgment on both the Plaintiff's

---

[2]Plaintiff originally filed this action *pro se*, but as of May 13, 2013, Plaintiff is currently represented by counsel in this matter.

claim for disparate treatment and his reasonable accommodation claim. Defendant asserts that Plaintiff does not have the necessary evidentiary support to establish a claim for disparate treatment. Furthermore, as to Plaintiff's reasonable accommodation claim, Defendant asserts that Plaintiff made it impossible to find a reasonable accommodation for him and that any accommodation would have caused Defendant undue hardship. Plaintiff responded in opposition to Defendant's motion, seeming to argue that Ms. Poole's actions regarding his vacation leave amounted to disparate treatment and is evidence of a hostile work environment. Additionally, Plaintiff contends that Defendant could have easily accommodated his request to be placed in a position that complied with his religious beliefs, but despite his cooperation, Defendant refused to provide such an accommodation. Defendant replied to Plaintiff's arguments asserting that the alleged actions, in conjunction with Plaintiff's request for vacation leave, do not provide a sufficient basis to establish a claim for disparate treatment or a hostile work environment claim. As to Plaintiff's reasonable accommodation claim, Defendant asserts that it did attempt to assist Plaintiff in finding a suitable position but it was not obligated to change another employee's position to accommodate Plaintiff's religious beliefs. Further, Defendant argues that certain evidence that Plaintiff attempts to use in support of his arguments cannot be considered in opposition to summary judgment. The Court will consider in turn the basis for Defendant's Motion for Summary Judgment.

II.     STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the court shall grant summary judgment when there exists no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Zahodnick v. Int'l Bus. Machs. Corp.</u>, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1349, 89 L. Ed. 2d 538 (1986). When making a summary judgment determination, the court must view the evidence and all justifiable inferences from the evidence in the light most favorable to the non-moving party. <u>Zahodnick</u>, 135 F.3d at 913. However, the party opposing summary judgment may not rest on mere allegations or denials, and the Court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 962 (4th Cir. 1996); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

III. DISCUSSION

Based on Plaintiff's response to the Motion for Summary Judgment, it appears that Plaintiff is making the following three claims: (1) a disparate treatment claim; (2) a hostile work environment claim; and (3) a reasonable accommodation claim. Accordingly, the Court will address each claim in turn.

A. DISPARATE TREATMENT

Under Title VII of the Civil Rights Act of 1964, it is an "unlawful employment practice

for an employer . . . to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. §2000e-2(a)(1). An employee may bring both a disparate treatment claim and a reasonable accommodation claim based on religious discrimination under Title VII. Chalmers v. Tulon Co. Of Richmond, 101 F.3d 1012, 1017 (4th Cir. 1996). To establish a claim of disparate treatment based on religious discrimination, an employee must show that based on his religious beliefs, the employer treated him differently. Id. In order to satisfy this burden at the summary judgment stage, a plaintiff must demonstrate that, (1) his job performance was satisfactory and (2) provide direct or indirect evidence that supports a reasonable inference that the adverse employment action was discriminatory. Id. (quoting Lawrence v. Mars, Inc., 955 F.2d 902, 905-06 (4th Cir. 1992)).

Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999). If such evidence is unavailable, a plaintiff may use a burden-shifting scheme to establish an "inferential case" of discrimination. Chalmers, 101 F.3d at 1017. "This might consist of evidence that the employer treated the employee more harshly than other employees of a different religion, or no religion, who had engaged in similar conduct." Id. If a plaintiff provides such circumstantial evidence, the burden shifts to the defendant to provide a legitimate nondiscriminatory reason for its actions. Id. After the defendant provides such reason, the plaintiff must then establish that such reason is pretextual, and that the defendant's actions were "actually motivated by illegal

6

considerations." Id. at 1018.

In support of his disparate treatment claim, Plaintiff states that Defendant did not require any other employee to disclose their vacation plans or obtain their co-workers consent in order for Defendant to grant their request for vacation leave. As a result, Plaintiff contends that this is direct evidence of religious discrimination,[3] for which Defendant has not provided any legitimate nondiscriminatory reason. Defendant, however, argues that Ms. Poole's actions do not constitute an adverse employment action upon which a disparate impact claim may be premised.

Title VII "affords no protection from discrimination unless there has been some adverse employment action by the employer." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985). The Supreme Court defines an "adverse employment action" as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). Likewise, "[i]n determining what constitutes an adverse employment action for Title VII purposes, the Fourth Circuit consistently has focused on 'whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating.'" Wagstaff v. City of Durham, 233 F. Supp. 2d 739, 744

---

[3]The Court notes that, while Plaintiff refers to this evidence as direct evidence, such evidence is not direct evidence of discrimination, but rather circumstantial evidence of discrimination. Ms. Poole's actions do not directly reflect a discriminatory attitude towards Plaintiff's religion. Instead, Plaintiff may be contending that a factfinder may infer from Ms. Poole's actions that she required Plaintiff to disclose his purpose for his vacation and obtain his co-workers consent because of her hostility towards Plaintiff's religion.

(M.D.N.C. 2002) (quoting <u>Page v. Bolger</u>, 645 F.2d 227, 233 (4th Cir.1981)); <u>see also</u> <u>Mosley v.</u>

<u>Bojangles' Restaurants, Inc.</u>, No. 1:03CV00050, 2004 WL 727033, at *5 (M.D.N.C. March 30,

2004).

An employment action, however, need not be "ultimate" to be "adverse." <u>Wagstaff</u>, 233

F.Supp. 2d at 744 (citing <u>Von Gunten v. Maryland</u>, 243 F.3d 858, 865 (4th Cir. 2001) (internal

quotation marks omitted) (stating that "conduct short of 'ultimate employment decisions' can

constitute adverse employment action")). As the Fourth Circuit Court of Appeals held in <u>Von</u>

<u>Gunten</u>, an "[a]dverse employment action includes any retaliatory act or harassment if, but only

if, that act or harassment results in an adverse effect on the terms, conditions, or benefits of

employment." 243 F.3d at 866 (internal quotations omitted). Thus, the Court must determine

whether Plaintiff has demonstrated a genuine issue of material fact that Ms. Poole's actions

concerning his vacation leave "had some significant detrimental effect" on the terms, conditions,

or benefits of employment. <u>Wagstaff</u>, 233 F.Supp. 2d at 744 (quoting <u>Boone v. Goldin</u>, 178

F.3d 253, 256 (4th Cir. 1999)). Such significant effects include "reduced pay, a diminished

opportunity for promotion, less responsibility, or a lower rank." <u>Id.</u> (citing <u>Boone</u>, 178 F.3d at

257).

In this situation, Plaintiff was not denied his vacation leave. Instead, Plaintiff was

allegedly forced to take additional steps in order to be granted his leave. Plaintiff asserts that he

was forced to take such steps due to the nature of his request, which was that he was requesting

leave to attend a Bible conference. These actions, however, did not have any detrimental effect

on his ability to take his vacation leave. <u>See</u> <u>Huggins v. N.C. Dept. of Admin</u>, No. 5:10-CV-414-

8

FL, 2013 WL 5201033, at *9 (E.D.N.C. Sept. 13, 2013) (finding that when a plaintiff's leave request was first denied but then eventually granted, the initial denial did not constitute an adverse employment action); see also Figuero v. New York Health and Hospitals Corp, 500 F. Supp. 2d 224, 230 (S.D.N.Y. 2007) (finding that because a plaintiff was not barred from taking her annual leave, the events surrounding her being granted the leave failed to constitute an adverse employment action). The best inference to be drawn from Ms. Poole's action, if anything, was that it was an attempt to embarrass or harass Plaintiff. Embarrassment or harassment that does not have a significant or detrimental effect on the terms, conditions, or benefits of Plaintiff's employment is not sufficient to establish Plaintiff's prima facie case of religious discrimination. See Von Gunten, 243 F.3d at 866 (finding that periodic episodes of harassment occurring over a year and a half did not have a detrimental effect on the terms, conditions, or benefits of the plaintiff's employment). Therefore, if Plaintiff cannot establish his prima facie case, it is not necessary to inquire into whether Defendant can provide a legitimate nondiscriminatory reason for Ms. Poole's actions. Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiff's disparate treatment claim based on Ms. Poole's actions concerning his vacation leave.

While not completely clear in Plaintiff's complaint or Plaintiff's brief in response to Defendant's Motion for Summary Judgment, Plaintiff may also be asserting that his discharge or termination was motivated by hostility towards his religious beliefs. Thus, Plaintiff may be attempting to assert a mixed-motive claim for religious discrimination pursuant to 42 U.S.C. § 2000e-2(m). Pursuant to § 2000e-2(m) "an unlawful employment practice is established when

the complaining party demonstrates that . . . religion . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." To prevail under this mixed-motive analysis, "the employee does not have to demonstrate that the prohibited discrimination was the sole motivating factor . . . so long as it was a motivating factor." Fisher v. Maryland Dep't of Pub. Safety & Corr. Serv., 461 Fed. App'x 242, 243 (4th Cir. 2012) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir.2004)). However, "[t]he protected trait 'must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.'" Hill, 354 F.3d at 286 (quoting Reeves v. Sanderson Plumbing Prod., Inc ., 530 U.S. 133, 141, 120 S. Ct. 2097, 2105, 147 L. Ed. 2d 105 (2000)).

Plaintiff argues that Ms. Poole's hostility towards his religion motivated Ms. Poole's decision to enforce the general order concerning the training and carrying of weapons, which ultimately led to Plaintiff's discharge. In support of this argument, he cites Ms. Poole's actions regarding his vacation leave and certain statements which were allegedly made by Ms. Poole and other co-workers. Defendant, however, argues that it was Plaintiff's failure to attend the training and comply with the general order that led to his dismissal, not anyone's feelings regarding Plaintiff's religious beliefs.

After reviewing the evidence in this action concerning Plaintiff's discharge, the Court finds that Plaintiff is unable to establish that his discharge was in part motivated by his religion. While Ms. Poole originally chose to enforce the General Order concerning the training and carrying of defensive weapons, it was ultimately Chief Newell who chose to continue to enforce

10

the General Order and it was his decision to discharge Plaintiff for his failure to comply with the General Order. (Ex. 6 - Newell Decl [Doc. #30], at 2-3.) Plaintiff has not provided any evidence that Chief Newell's actions, in enforcing the General Order, were in any way motivated by discrimination on the basis of Plaintiff's religion. Rather, Chief Newell stated that he had to enforce the General Orders in place as to all employees to keep the Police Department's accreditation from the Commission on Accreditation for Law Enforcement Agencies ("CALEA"). (Id. at 1.) Further, Chief Newell asserted that if he did not enforce the General Order as to Plaintiff, he would be putting Plaintiff's safety at risk and putting himself and the Defendant at risk of liability. (Id. at 3.) As has been noted, Plaintiff has not presented any evidence to contradict Cheif Newell's statements or to show that Chief Newell was motivated in any way by hostility towards Plaintiff's religious beliefs. Accordingly, the Court grants summary judgment insofar as Plaintiff attempts to assert a religious discrimination claim under the mixed-motive analysis.

B.    HOSTILE WORK ENVIRONMENT

Plaintiff next seems to assert a claim for hostile work environment. To defeat Defendant's Motion for Summary Judgment as to Plaintiff's hostile work environment claim, Plaintiff must show that: "(1) he experienced unwelcome harassment; (2) the harassment was based on his race, color, religion, national origin, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006) (citing Bass v. E.I. Dupont de Nemours & Co.,

324 F.3d 761, 765 (4th Cir. 2003)).

In support of his hostile work environment claim, Plaintiff states that Ms. Poole's actions concerning his request for vacation leave and other "active provocations" fostered a hostile work environment against him. (Resp. to Mot. for Summ. J. [Doc. #35], at 12.) While it is not completely clear what active provocations to which Plaintiff is referring, after a review of Plaintiff's allegations in his Complaint and his response to Defendant's Motion for Summary Judgment, Plaintiff has failed to demonstrate all four elements of a hostile work environment claim. First, as to the fourth factor, Plaintiff has not in any way provided a basis for imposing liability on the Defendant for any of its employee's actions. Even if Plaintiff had provided a basis for imposing liability on Defendant for his co-workers' and supervisor's alleged actions, Plaintiff, nonetheless, failed to allege sufficient evidence to create a genuine issue of material fact concerning the third element. Specifically, for harassing conduct to qualify as sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment, Plaintiff must show (1) he actually perceived the harassment as "sufficiently abusive or hostile" and (2) the "harassment was objectively severe or pervasive." E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009). In other words, this element contains "both subjective and objective components." Id. at 175. Assuming Plaintiff has shown that he subjectively perceived a sufficiently abusive and hostile work environment, a reasonable factfinder could not find the alleged misconduct to be sufficiently severe or pervasive as an objective matter.

The objective analysis of severity and pervasiveness depends on "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993)). Although this standard "surely prohibits an employment atmosphere that is permeated with discriminatory intimidation, ridicule, and insult, it is equally clear that Title VII does not establish a general civility code for the American workplace." Id. (internal citation and quotation marks omitted). "[I]n order to be actionable, the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'" Id. (alterations in original) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2284, 141 L. Ed. 2d 662 (1998)).

Plaintiff alleges that Ms. Poole treated him differently after he revealed his religious beliefs to her. (Ex. A - Westbrook Affidavit [Doc. #35], at 6-7.) He states that her actions regarding his vacation leave occurred after she knew of such beliefs. (Id.) Plaintiff also alleges that another supervisor, Pamela Feaster acted offensively towards him in relation to his refusal to participate in the training. (Id. at 8.) Further, Plaintiff states that Ms. McAbee with Human Resources made an offensive comment to him concerning his refusal to participate in training. (Id. at 10). Specifically, Plaintiff asserts that Ms. McAbee told him that there would be no harm in carrying weapons and that she knew other Jehovah's Witnesses and Christians who did not have objections to carrying weapons in relations to their work. (Id.) After refusing to participate in training, Plaintiff was scheduled to participate in a later occurring training, and this was announced via a memoranda posted in the Police Department. Plaintiff asserts that such

posting, along with a posting rescheduling the training, caused him humiliation and prompted unkind and hurtful comments from co-workers.  (Id. at 11.)

None of this conduct, however, is sufficient to establish a genuine issue of material fact concerning Plaintiff's claim for hostile environment, as no reasonable factfinder could find that such conduct was so extreme as to amount to a change in the terms and conditions of employment.  Isolated comments from co-workers and Ms. Poole's actions regarding Plaintiff's vacation request, does not amount to the severe and pervasive conduct necessary to establish a claim of hostile work environment.  Accordingly, the Court grants the Defendant's Motion for Summary Judgment as to Plaintiff's hostile work environment claim.

C.    REASONABLE ACCOMMODATION

Plaintiff claims that Defendant failed to provide him with a reasonable accommodation, as is required by Title VII.  Pursuant to Title VII, an employer has a "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." EEOC v. Firestone, 515 F.3d 307, 312 (4th Cir. 2008) (quoting Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 75, 97 S. Ct. 2264, 2272, 53 L. Ed. 2d 113 (1977).  In a religious accommodation case, such as the present case, courts employ a burden-shifting framework similar to the one articulated by the Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Id. First, the plaintiff must establish a prima facie claim by showing that: (1) he has a bona fide religious belief that conflicts with an employment requirement; (2) he informed the employer of this belief; and (3) he was disciplined for failure to comply with the conflicting employment

requirement. Id. (citing Chalmers, 101 F.3d at 1019). Second, if the plaintiff establishes a prima facie case, the burden shifts to the defendant employer to show that it could not reasonably accommodate the plaintiff's religious need without undue hardship. Id. (citing Chalmers, 101 F.3d at 1019). To satisfy its burden, the defendant employer must demonstrate either: "(1) that it provided the plaintiff with a reasonable accommodation for his religious observances or (2) that such accommodation was not provided because it would have caused an undue hardship—that is, it would have resulted in more than a de minimis cost to the employer." Id. (internal quotation marks omitted) (quoting Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 67, 107 S. Ct. 367, 371, 93 L. Ed. 2d 305 (1986)).

As to Plaintiff's prima facie case, Defendant states that it does not contest the second and third elements. (Mot. for Summ. J. Br. [Doc. #31], at 7.) Further, Defendant acknowledges that the first element, concerning whether Plaintiff's religious beliefs were sincere, does not provide an appropriate basis for seeking summary judgment. (Id.) Accordingly, the only matter before this Court at the summary judgment stage, for purposes of Plaintiff's reasonable accommodation claim, is whether Defendant provided Plaintiff with a reasonable accommodation or whether such accommodation was not provided because it would cause undue hardship.

i.      Reasonableness

Defendant initially argues that it encouraged Plaintiff to apply for another position with the Defendant and offered to assist with such search, thereby, providing Plaintiff with a reasonable accommodation. Plaintiff allegedly refused to apply for other vacant positions, despite Defendant's offer to assist him in applying. Instead of applying for a vacant position, Defendant asserts that Plaintiff insisted that it was Defendant's responsibility to find him an

acceptable position. Defendant claims that without Plaintiff assisting in the process, Defendant did not know what positions Plaintiff was qualified to occupy, and therefore, Plaintiff made it impossible to provide him with an accommodation. Accordingly, while combined together, Defendant is actually asserting two arguments. First, it argues that its offer of assistance and encouragement was a reasonable accommodation, and second, it argues that Plaintiff, by his failure to cooperate, made any reasonable accommodation impossible.

In response to this combined argument, Plaintiff asserts that he believed there was a hiring freeze at the time and that no vacant positions were available. Further, Plaintiff states that Ms. McAbee told him that he had to resign from his current position in order to apply for the vacant positions, and Plaintiff was skeptical of this. Plaintiff also states that despite Defendant's assertion that he failed to cooperate in finding an open position, he did attempt to find another position with the Defendant. Specifically, Plaintiff asserts that he contacted the offices of Vice Chancellor Welborne and Chancellor Battle, who both indicted that they would be happy to have him reassigned to their respective offices. (Ex. A - Westbrook Affidavit [Doc. #35], at 11-12.) Plaintiff, however, asserts that Ms. McAbee was allegedly unwilling to take any steps to reassign Plaintiff to their offices. (Id.) Plaintiff also asserts that he told Ms. McAbee that he would be happy to work in any area that would not jeopardize his religious beliefs, but that she failed to follow through with her promised assistance. (Id. at 10-11.)

Initially, this Court must note that, for purposes of summary judgment, it cannot consider the statements contained in Plaintiff's affidavit associated with Vice Chancellor Welborne and Chancellor Battle. An "affidavit . . . used to . . . oppose a motion must be made on personal knowledge, *set out facts that would be admissible in evidence*, and show that the affiant .

. . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (emphasis added). When an "affidavit contains both inadmissible and admissible portions courts are free to strike only the inadmissible portions." Morrison v. Jordan, No. 7:08–CV–00643, 2010 WL 3783452, at *3 (W.D. Va. Sept. 28, 2010) (citing Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (noting that summary judgment affidavits cannot be conclusory or based upon hearsay and finding that the district court acted properly when it struck portions of the plaintiff's affidavit)).

The alleged statements of Vice Chancellor Welborne and Chancellor Battle are inadmissible hearsay. Under Federal Rule of Evidence 801(c), a statement is hearsay, and therefore inadmissible, if it "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In this instance, Plaintiff is the declarant, and he is attempting to offer Vice Chancellor Welborne's and Chancellor Battle's statements to show that he was offered positions in other offices. Further, Plaintiff is also attempting to offer hearsay-within-hearsay as to the statements that Ms. McAbee allegedly made to both Vice Chancellor Welborne and Chancellor Battle concerning her unwillingness to reassign Plaintiff to their offices. Plaintiff has not provided an affidavit or other testimony from either of Vice Chancellor Welborne or Chancellor Battle concerning these matters. Further, while exceptions to the hearsay rule exist, Plaintiff has not argued that such statements fall under any exception and this Court has not found any applicable exception. Accordingly, because the statements offered through the Plaintiff's affidavit from Vice Chancellor Welborne and Chancellor Battle are hearsay and not admissible, this Court will not consider them for purposes of Defendant's Motion for Summary Judgment. This Court finds,

however, that even without such evidence, Defendant has not met its burden at the summary judgment stage, concerning whether Plaintiff made it impossible for Defendant to provide a reasonable accommodation or whether assistance was actually offered to constitute an accommodation.

In analyzing whether Defendant has met its burden, the Court will first address Defendant's argument that through its offer of assistance and encouragement to apply for vacant positions, it provided Plaintiff with a reasonable accommodation. An employer, in asserting that it provided a reasonable accommodation, must show that "it has provided the plaintiff with a reasonable, though not necessarily a total, accommodation." Firestone, 515 F.3d at 315. In this action, Defendant relies heavily on Walden v. Centers for Disease Control and Prevention, 669 F.3d 1277 (11th Cir. 2012), for its proposition that providing assistance and encouragement in finding a different position that would comply with the employees religious beliefs, is a reasonable accommodation. In Walden, however, the employer did more than just encourage and assist the employee in finding a different position. Instead of terminating her employment for a refusal to fulfill her job responsibilities, the employer laid the employee off. Walden, 669 F.3d 1294. This allowed her to retain her tenure with the company if rehired within a year. Id. The employee, thereafter, chose not to apply for the vacant positions. Id.

In this action, Defendant does not seem to have provided a similar option. While Defendant claims to have offered Plaintiff encouragement and assistance in applying for other positions, there was no offer for him to retain his tenure with the Defendant while looking for other jobs. Further, there is a dispute as to whether Defendant actually did provide assistance in applying for other positions, as Plaintiff asserts that Ms. McAbee did offer to help, but

Plaintiff contends that thereafter, Ms. McAbee did not follow through on her promise. Accordingly, the Court finds that there is a genuine dispute of material fact as to whether Defendant's alleged encouragement and assistance qualifies as a reasonable accommodation in this instance.

Similarly, a genuine issue of material fact exists concerning Defendant's argument that Plaintiff made it impossible to provide a reasonable accommodation. It is true that while "Title VII plaintiffs are under no duty to propose the specific means to accommodate their religious practices[,]" the employee does, nonetheless, have a duty to cooperate in the search for a reasonable accommodation. Cary v. Carmicheal, 908 F. Supp. 1334, 1347 (E.D. Va. 1995) (citations omitted). If a plaintiff refuses to cooperate with his employer's attempt to reach a reasonable accommodation, and thereby makes an accommodation impossible, "the employee himself is responsible for any failure of accommodation and his employer should not be held liable for such failure." Id. (quoting Chrysler Corp. v. Mann, 561 F.2d 1282, 1285 (8th Cir. 1977).

It is not clear from the evidence presented that Plaintiff refused to cooperate, or that any such failure made it impossible for Defendant to provide a reasonable accommodation for him. Plaintiff does state in his affidavit that he thought there was a hiring freeze and that he was skeptical of Ms. McAbee's alleged assertion that he had to resign before applying for other positions. Plaintiff, however, also stated that Ms. McAbee refused to continue assisting him in finding a different position. It is noteworthy that Plaintiff had been employed by the Defendant in some capacity since May 1994, which indicates that Plaintiff had performed various jobs with Defendant throughout the years. Defendant kept a record of these jobs and Plaintiff's other

employment documents, including his employment applications, in a personnel file. (Ex. 5 McAbee Affidavit [Doc. #30].) While Defendant asserts that it was not clear from his file what positions he would be qualified for (Id., at 22.), the Court finds that after reviewing the contents of the file provided by Defendant, that Defendant may have been capable of determining what if any vacant positions were available to Plaintiff. For instance, Plaintiff's personnel file contained two applications for employment, listing past jobs and duties, and it also contains performance reviews, which detail the various tasks Plaintiff had been responsible for. (Id.) Therefore, even if Plaintiff himself did not apply for the vacant positions, it may have been possible for Defendant to suggest certain positions or place Plaintiff in a vacant position based on his personnel file and the descriptions of his past employment. Accordingly, the Court finds that there is a genuine dispute of material fact concerning whether Plaintiff's alleged inaction rendered Defendant's ability to provide a reasonable accommodation impossible.

ii. Undue Hardship

As stated above, Defendant may, alternatively, meet its burden by showing that it could not reasonably accommodate Plaintiff without causing undue hardship. Firestone, 515 F.3d at 315; see Trans World Airlines, 432 U.S. at 84, 97 S. Ct. at 2277. An accommodation causes an undue hardship "whenever that accommodation would result in 'more than a de minimis cost' to the employer." Ansonia Bd. of Educ., 479 U.S. at 67, 107 S. Ct. at 371 (quoting Hardison, 432 U.S. at 84, 97 S. Ct. at 2277 (finding that an employer is not required to bear more than a de minimis cost in order to accommodate the religious observance of an employee, and finding that an employer is not required to incur extra costs to secure a replacement)). Undue hardship may be present "where an accommodation would impose more than a de minimis impact on

coworkers, such as depriving coworkers of seniority rights or causing coworkers to shoulder the plaintiff's share of potentially hazardous work." Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir.1999) (citing Opuku–Boateng v. California, 95 F.3d 1461, 1468 n. 12 (9th Cir.1996)). Furthermore, an employer is not liable when the accommodation would require an employer to violate federal or state law. Baltgalvis v. Nmewport News Shipbuilding Inc., 132 F. Supp. 2d 414, 419 (E.D. Va. 2001).

Defendant argues that Plaintiff's request to be placed in a non-weapons position would have caused undue hardship on the Defendant. In support of this argument, Defendant asserts that the reclassification or creation of a new position for Plaintiff would have required Defendant to seek approval from the North Carolina Office of State Human Resources pursuant to state regulations. (Mot. for Summ. J. Br. [Doc. #31], at 8-9.) Accordingly, Defendant asserts that Ms. McAbee could not have unilaterally reclassified Plaintiff's position or created a new position for Plaintiff in compliance with his religious beliefs.

It does not appear, however, that Plaintiff only requested that his current position be reclassified or a new position be created for him. Instead, he stated that he would be "more than happy to work in any area that would not jeopardize my spiritual conscience." (Ex. A-6 - Westbrook Ltr to McAbee [Doc. #35].) Further, Defendant admits that other vacant positions did exist at the time of Plaintiff's discharge. (Mot. For Summ. J. Br. [Doc#31], at 9 n. 2.) However, Defendant does not explain why placing Plaintiff in one of the vacant positions would have caused the Defendant an undue hardship, nor does Defendant argue that Plaintiff was not qualified for such positions. Instead, Defendant only argues that it could not determine whether or not Plaintiff was qualified for such positions based on his personnel file. As stated above,

however, after reviewing the documents contained in Plaintiff's personnel file, the records reveal that it may have been possible for Defendant to determine Plaintiff's qualifications, and therefore, it may have been possible for Defendant to find Plaintiff a vacant position to which Plaintiff could have been assigned.

Additionally, insomuch as Defendant argues that it could not place Plaintiff in a different position within the Police Department due to the possibility of violating CALEA standards and exposing Defendant to an increased risk of liability, the above findings are still applicable. Plaintiff did not limit his request for a different position to one within the Police Department. Instead, his request was for any position that did not conflict with his religious beliefs. Accordingly, the Court finds that there are genuine issues of material fact concerning whether providing Plaintiff an accommodation would have resulted in undue hardship on Defendant.[4]

---

[4]The Court notes that Plaintiff included an affidavit from Lacy DeBerry, a former supervisor in the Defendant's Human Resources Department, in support of his argument that Defendant could have easily accommodated his religious beliefs. (Ex. B - DeBerry Affidavit [Doc. #35].) Defendant argues that the Court cannot consider this affidavit as evidence because it was not sworn before a notary or made under penalty of perjury.

Pursuant to 28 U.S.C. § 1746, an unsworn statement is admissible at the summary judgment stage only if the witness certifies that the unsworn statement is "true under penalty of perjury." 28 U.S.C. § 1746; Network Computing Servs. Corp. v. Cisco Sys., Inc., 152 Fed. App'x 317, 321 (4th Cir. 2005); see Moore v. Laurens Cnty., No. 6:09–CV–03083, 2011 WL 4345883, at *3 n. 3 (D.S.C. Sept. 16, 2011) (noting that "an unsworn affidavit, not accompanied by a statement affirming its authenticity, is not admissible to create an issue of fact"). Section § 1746 provides a general form for such certification, but states only that the certification must be made in "substantially" that form.

The affidavit at issue does not state that it was sworn under penalty of perjury, but it does state that the affiant was "duly cautioned and under oath." (Ex. B - DeBerry Affidavit [Doc. #35], at 1.) As the Court found that the Defendant did not provide sufficient evidence to demonstrate that there is no genuine dispute of material fact concerning undue hardship absent this affidavit, the Court need not consider at this time whether the statement that Ms. DeBerry was duly cautioned and under oath, suffices for purposes of § 1746.

IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment [Doc. #30] as to Plaintiff's disparate treatment and hostile work environment claims and deny Defendant's Motion for Summary Judgment [Doc. #30] as to Plaintiff's reasonable accommodation claim.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is hereby GRANTED IN PART and DENIED IN PART.

This the 11th day of September, 2014.

United States District Judge